835 So.2d 1159 (2002)
Mark Lee GIBSON, Appellant,
v.
STATE of Florida, Appellee.
No. 2D01-497.
District Court of Appeal of Florida, Second District.
November 15, 2002.
Rehearing Denied January 27, 2003.
*1160 Donald A. Smith, Jr., and Gwendolyn R. Hollstrom of Smith & Tozian, P.A., Tampa, for Appellant.
Richard E. Doran, Attorney General, Tallahassee, and Michele Taylor, Assistant Attorney General, Tampa, for Appellee.
GREEN, Judge.
Mark Lee Gibson appeals an order denying his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. The motion alleged three grounds for relief. The trial court summarily denied the first two grounds of the motion, and we affirm that ruling without further comment. Ground three of the motion alleged ineffective assistance of counsel, and the trial court ordered an evidentiary hearing on this ground. After the hearing, the trial court denied relief. We conclude that ineffective assistance of counsel did not prejudice Mr. Gibson, see Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and therefore, we also affirm this portion of the order.
This court previously affirmed Mr. Gibson's direct appeal of his judgments and sentences with an extensive written opinion. See Gibson v. State, 721 So.2d 363 (Fla. 2d DCA 1998). In Gibson, the court detailed some of the circumstances that led to the present claim for ineffective assistance of counsel.
Mr. Gibson was charged with two counts of capital sexual battery and three counts of lewd and lascivious act on a child under twelve years of age, which carried a mandatory life sentence. The week before his trial, the attorney who initially represented Mr. Gibson was reassigned to another division, and Mr. Gibson was given a new attorney. There is some dispute as to exactly when this occurred. There is also some dispute as to the new attorney's ability to adequately prepare for the trial. Indeed, the new attorney requested a continuance the morning of trial alleging he was unprepared to try the case, but the continuance was denied. Ultimately, both the initial attorney and the newly assigned attorney represented Mr. Gibson. Both attorneys were experienced criminal trial attorneys.
In his postconviction motion, Mr. Gibson alleged that the new counsel did not adequately prepare a defense and, as a result, committed a critical, prejudicial error during the trial. While cross-examining the child victim, this attorney asked the child broad, open-ended questions. The child responded by testifying to additional acts of sexual abuse by Mr. Gibson with which Mr. Gibson had not been charged. At least one of these acts would have itself constituted capital sexual battery.
At the postconviction hearing, the attorney who elicited this testimony asserted that his questioning was a specific, thought-out trial strategy intended to show the child victim was confused in her many allegations.[1] Mr. Gibson points out that *1161 there were other, less perilous ways to accomplish that purpose, such as asking very specific, limited questions or impeaching the child with prior statements. Whether a criminal defense attorney's decision to elicit testimony of uncharged crimes, which evidence is generally regarded as inherently highly prejudicial, can ever be considered a reasonable trial strategy is not an issue we need address in this case. See, e.g., Cabrera v. State, 766 So.2d 1131, 1133 (Fla. 2d DCA 2000) (noting "patently unreasonable" decisions, although characterized as tactical, are not immune from ineffective assistance claims). We conclude that there was no prejudice to Mr. Gibson from any error of counsel. See Cook v. State, 638 So.2d 134, 136 (Fla. 1st DCA 1994) (stating that court considering claim of ineffective assistance of counsel need not make a specific ruling on performance component when it is clear that prejudice component is not satisfied).
The child victim testified resolutely and consistently that the charged acts of sexual abuse occurred. More important, Mr. Gibson admitted to those acts in a recorded confession to law enforcement, including an admission that his penis made contact, or "union," with the victim's vagina, which would support his conviction for capital sexual battery. In a postconviction proceeding, it is Mr. Gibson's burden to establish prejudice as a result of counsel's errors. We conclude, as did the postconviction trial judge, that there is no reasonable probability that the outcome of the trial proceedings would have been different even in the absence of the child's testimony on cross-examination.
Affirmed.
SILBERMAN, J., Concurs specially with opinion.
BLUE, C.J., Dissents with opinion.
SILBERMAN, Judge, Specially concurring.
Although several points raised by the dissent are troubling, based on the record before us I agree with the majority opinion.
At the evidentiary hearing on Gibson's postconviction motion, both the first attorney who represented him in the underlying case and the attorney who was assigned to take over the representation testified. Although Gibson asserts that his attorneys were not adequately prepared to represent him at trial, the record reflects that they were highly experienced criminal defense lawyers; they attended the depositions of the key witnesses in the case; they discussed and agreed on the strategy to be used; they met with and prepared Gibson for trial; they felt they were fully prepared to try the case; and they tried the case together. Their testimony reflects that the change in their case assignments did not hamper their ability to represent Gibson.
The attorneys were emphatic that Gibson had a weak defense case because of his confession and the evidence that they expected would be presented at trial. They also testified that they had taken the victim's deposition and thought they could show the victim was confused about whether the incidents occurred and where they had occurred. The attorneys stated that difficult strategy choices had to be made. They acknowledged that at trial, the cross-examination of the victim was broad and resulted in her testimony as to additional *1162 acts of sexual abuse committed by Gibson. However, they concluded that their best hope of successfully defending Gibson was to discredit the victim by asking open-ended questions that would lead her to appear confused and unbelievable. They also believed this strategy might help to explain away Gibson's confession.
While the strategy used by defense counsel was unsuccessful in securing a complete acquittal for Gibson, he was found not guilty of two of the charges. But whether a strategy is successful or unsuccessful is not the standard by which counsels' performance must be measured. See Sireci v. State, 469 So.2d 119, 120 (Fla.1985). Rather, there is a presumption of reasonableness of counsel's trial strategy. See Downs v. State, 453 So.2d 1102, 1108 (Fla.1984). While the dissent concludes that counsels' strategy was unreasonable, the postconviction trial court's conclusion to the contrary is supported by the record. Judge Barbas correctly noted that "[t]he trial strategy implemented by [Gibson's] attorneys was a high wire act balancing the risks that a jury might make the propensity inference with the reward that confusion and reasonable doubt might exonerate [Gibson]. The circumstances of this particular case, however, demonstrate that the strategy and its implementation were appropriate in light of [Gibson's] audiotaped confession."
The applicable standard of review requires us to defer to the trial court's factual findings that are supported by competent, substantial evidence, but we independently review the trial court's legal conclusions. See Cabrera v. State, 766 So.2d 1131, 1133 (Fla. 2d DCA 2000). It is not for this court to reweigh the evidence and substitute its view of the witnesses' credibility for that of the trial court. See Blanco v. State, 702 So.2d 1250, 1252 (Fla.1997). Judicial scrutiny of counsels' performance must be highly deferential, and there is a strong presumption that counsels' conduct falls within the wide range of reasonable professional assistance. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Moreover, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691, 104 S.Ct. 2052.
Gibson's burden was to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. The ineffective assistance of counsel must have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686, 104 S.Ct. 2052.
The record before us supports the postconviction trial court's denial of relief. Gibson's attorneys evaluated the case, weighed the options, and made an informed decision as to what they considered to be the best available strategy to defend Gibson in a weak defense case. Because the record does not lead to the conclusion that, but for the claimed errors of counsel there was a reasonable probability that the outcome of the trial would have been different, I concur with the majority opinion.
BLUE, Chief Judge, Dissenting.
I respectfully dissent. I conclude that the Public Defender's Office of the Thirteenth Judicial Circuit provided ineffective assistance of counsel that requires a new trial. To fully understand my position requires familiarity with the prior decision in this case on direct appeal. Gibson, 721 So.2d 363.
*1163 Mark Gibson was set for trial on two counts of capital sexual battery, each carrying a mandatory life sentence, and three counts of lewd and lascivious acts. On the day of trial, an assistant public defender requested a continuance, stating that he had just met the defendant and was not prepared for trial. This newly assigned assistant public defender attributed this problem to the reassignment of attorneys in the week before trial. The trial court denied the continuance, and on direct appeal this court affirmed, ruling that it was not an abuse of discretion. Gibson, 721 So.2d at 366 (holding that the public defender's decision to reassign Gibson's case to another attorney, "especially when that decision was made on the Friday before his trial for a capital felony, may raise an issue of ineffective assistance of counsel, but it did not compel the trial judge, who was uninvolved in the reassignment, to grant a continuance").
Later that day, trial proceeded with the assistant public defender relieved from the case and the newly assigned public defender. During cross-examination, as part of a strategy to confuse the young victim, the newly assigned public defender "successfully" elicited testimony from the victim of uncharged capital sexual battery conduct.
The jury found Gibson guilty of one count of capital sexual battery and two counts of lewd and lascivious acts; he was found not guilty of one count of capital sexual battery and one count of lewd and lascivious acts. Before leaving the courtroom, the jury learned that Gibson was to be sentenced to life imprisonment without the possibility of parole. One of the jurors, in passionate terms and with the agreement of the other jurors, told the court that they believed something had happened, but they would not have found the defendant guilty had they known their verdict would result in the sentence to be imposed.
Whether the victim's testimony on cross-examination was the "something happened" that resulted in the guilty verdict, we will never know. What we do know is that the attorney who did the cross-examination requested a continuance on the day of trial, with the representation to the trial judge that he was not prepared for trial.
I am aware that at the evidentiary hearing on the postconviction motion, both attorneys testified that they were prepared for trial. This testimony differed significantly from the representations made to the court at the time of trial, when the continuance was requested and the court was informed that through reassignment neither attorney was prepared to represent the defendant on these most serious charges. I come to my position on this court with some experience in the courtroom as an attorney and a trial judge. This background leads me to the conclusion that the attorney reassigned to another division, with no more responsibility for Gibson's case, did not prepare for trial. I accept the newly assigned public defender's earlier representations to the trial court that he was not prepared for trial. Although the record reflects that both attorneys appeared and tried the case, I am unable to see how doubling the number of unprepared attorneys provided effective assistance of counsel.
I agree there was sufficient evidence presented by the State to sustain the convictions, and thus I recognize that the second prong of Strickland is more difficult to meet. I understand the majority's position, but the jury's reaction to this verdict convinces me that the evidence was not so overwhelming that we can conclude Gibson was not prejudiced by ineffective representation. If defendants are entitled to representation by the public defender because they are unable to afford an attorney, the system that supplies such representation *1164 has the duty to provide attorneys prepared for trial. I doubt that a private law firm, representing a client for adequate compensation in any case, would make the switch in attorneys executed by the public defender's office in this case.[2] And this was not any case. This was a case in which the stakes were a mandatory life sentence without the possibility of parole. I conclude the Public Defender for the Thirteenth Judicial Circuit provided ineffective assistance of counsel to this defendant that cannot be rectified without a new trial, and thus I dissent.
NOTES
[1] We note that this strategy may have had some of its intended effect, as the jury ultimately found Mr. Gibson not guilty of one count of capital sexual battery and not guilty of one count of lewd and lascivious act.
[2] One rationale for affirming the denial of a continuance on direct appeal was the conclusion that the public defender's office was the equivalent of a law firm. Gibson, 721 So. 2d at 366 ("The public defender's office is comparable, in some respects, to a law firm. The trial court had appointed that office, not a specific assistant public defender, to represent Mr. Gibson.")